No, Illinois is now in session. The Honorable Justice Rainer W. Mitchell is presiding. No. Morning folks, please be seated. If I'm wrong, counsel Morgan argued this morning, you need to step up to the lectern and identify yourselves and we'll chat about timing. Typically we allot 20 minutes per side and then 10 minutes for rebuttal if that works for everyone. Names? Good morning, my name is Catherine Oberer from the State Appellate Defender. Could you repeat? Yes, yes, I'm sorry. It's Catherine Oberer and I'm from the Office of the State Appellate Defender, representing the appellant Angela Shaw. Assistant State's Attorney Kimberly Reeve, R-E-E-V-I-E on behalf of the people of the state of Illinois. Okay, very good. MSO work whenever you're ready. Good morning Your Honor, may it please the court. Mr. Shaw's post-conviction petition makes a substantial showing of a constitutional violation. Where he alleges that when he pleaded guilty to a sex offense, with a three year to life mandatory supervised release term, that no one, not his plea counsel nor the circuit court, advised him of the requirements of that omissar term. Those being that in Illinois, Mr. Shaw, an indigent person, had to come up with a host site, a home, on his own, from prison. That met a lot of requirements, before he could even start that mandatory supervised release term. And if he could not, he would stay in prison, indefinitely, for up to life. Which is the most severe penalty that we have in Illinois. Well isn't that what we would traditionally say is a collateral consequence of his decision to plead guilty? Typically, he's only required to be admonished as to direct consequences of this plea, right? Yes, Your Honor. Even if it is a collateral consequence, we're not disputing that. It's something that is so severe, that he needed to be advised of it, in this case. The Illinois Supreme Court, in the case of People v. Hughes, said this. They said that when a collateral consequence is so severe, enmeshed in the criminal process, and certain to occur, that it's something that counsel should advise a person of. Right. Certain to occur. And in the Hughes case, it was really outside the defendant's control, as to whether or not an SVP petition would be filed. Isn't this something that's particularly within the defendant's control? It's one more condition that parolee has to satisfy in order to be released, right? No, I disagree. The host-site requirement isn't something that's within his control. People who are convicted of sex offenses, like Mr. Shaw, have a lot fewer options of houses that they can parole to. They can't go to a halfway house. They can't go to a homeless shelter. They can't go to a work-release program, because they're convicted of a sex offense. There are thousands of registered sex offenders in Cook County who are compliant. So thousands of people are able to do it. It's not that hard. Well, I disagree. If you look at the class action suits that were mentioned in the introduction section of the argument, Murdoch v. Walker, Murphy v. Madigan, Murphy v. Rowell, they talk about there being 4,000 other people who are in the Department of Corrections at the time of those suits who have these three-year-to-life mandatory supervised release terms, and they're convicted of a sex offense. And it talks about them having trouble getting these sites, and they don't characterize it as something that is, I guess, a personal failure. It's a wealth classification. They can't go to a homeless site. They can't go to a shelter. They can't go to a work-release program. It's a private home. It's required. I understand the issue in those cases, and really those cases have to do with the sort of administrative structure that exists at the Department of Corrections, the Personal Review Board that governs these things. But I guess in your case, your client is now out. What would be the remedy for him here? He's in compliance, presumably. So is this all just an academic question? No. Mr. Shaw wants to withdraw his plea. That would be the ultimate remedy. He's saying in his post-conviction petition that plea counsel didn't advise him of the requirements of these MSR terms, and if they would have, he would have gone to trial and presented a defense. Same thing with the due process claim, that if the court would have entered correct admonishments as to what the requirements of these MSR terms were, then he wouldn't have entered this plea. He didn't have knowledge of the requirements. So the remedy here would ultimately be withdrawing the guilty plea. Mr. Shaw does want to withdraw his guilty plea, so that would be the ultimate remedy if he were to get through the end of the post-conviction proceedings. And he is still on MSR. To answer your other question, he's still subject to these host requirements. He's still indigent. He still has to have a home that meets all of these very stringent requirements in order to ever get released from that condition. If we were to rule in your favor, there would be a consequence to this in terms of other cases, and a requirement, I guess, that there be admonitions, some sort of admonition given by the court. What would the admonition be? You might be held indefinitely until you satisfy some nameless, faceless bureaucrat. What would the admonition be? For the court or for counsel? Well, either, I guess, or both. Yes. So for counsel, for plea counsel, I think there would be two more questions that plea counsel should talk to their clients about when they're advising them, you know, before deciding to plead guilty. So they need to determine that it was a sex offense with a three-year-to-life mandatory supervised release term. That's something they'd already do because, you know, you look at the nature of the plea and the sentencing consequences. So the first big question would be, do you anticipate having access to housing that meets the requirements of the parole board and the Department of Corrections? But those requirements are up to the parole board and not necessarily known. They're not written down. They're not statutory, if I am understanding this right. How is counsel supposed to predict what those requirements are going to look like? The requirements are in statutes. If you look at Chapter 730 of the Illinois Compiled Statutes, Article 5, Chapter 3, Act 3, Section 7, it's cited in the brief too. It talks about how you have to have a host site, and it talks about what a lot of those requirements are. There can't be children on the premises. There can't be any other sex offenders on the premises. You have to have a landsline probably to comply with your electronic monitoring requirement, which is included in that statute. They have to be on electronic monitoring to be on MSR. Also at the time that Mr. Shaw pleaded guilty, he couldn't have Internet at his home. If anyone at the premises had a computer or a phone that had access to the Internet, that's something that might make the host site ineligible. I think I'm looking at the right statute, and it says the conditions of parole are mandatory, supervised, released, shall be as such as the Prisoner Review Board deems necessary. And it contains five specific things, but doesn't say anything about Internet. That's something the Prisoner Review Board put in place, if I'm understanding this correctly. That's not pursuant to statute. Am I correct? The electronic monitoring requirement is specifically in the statute. I believe it's subsection 7A is what I have in front of me. It is also cited in the brief. Okay. And I also direct your honors to Murphy v. Raul, which is the published federal case that's cited in the introduction, which lists these same requirements. That's a published case that counsel could use that has these requirements that they could be using to advise their clients. These are the types of things your housing is going to have to have, or you don't get released. So will you have access to housing? That would be the first question. And then the second question would be similar to what your honor mentioned before. You would say to your client, if you don't have access to housing, you have to stay in prison until you do. So do you want to plead guilty? Two questions. Will you have access to housing? If not, do you want to plead guilty? And I think that's what the attorneys should do here because the consequence, again, is so severe. Just as in People v. Hughes, it's been meshed in the criminal process. It's part of the MSR term. And it's sufficiently certain to occur because some of those requirements are specifically detailed in the statute, and they're also shown in all of these class action suits, federal suits, that thousands of people with these MSR requirements who are indigent, they can't meet them. The federal court calls it virtually impossible to meet them. So that's what I think counsel should do. I do want you to finish the answer to this, but I just want to clarify. Am I right that if you're on a non-sex-offense MSR term, the end of the MSR term is the outside limit of how long they can keep you in prison if you don't have an appropriate place to go? So that you can, even if you're not a sex offender, be kept in, but that your MSR term is the outside limit of how long you can be kept in. Is that correct? Is that your understanding? Correct. So people who don't have a three-year-to-life term, there's an end. For people with a three-year-to-life term, there's not. It's indefinite. So if you have an MSR to life, if you have a three-year-to-life, you could be kept 25 years? Yes. Theoretically? Yes. Okay. Yes. And I do think there's a bit of a difference for the admonishments between the three-year-to-life and the term of your term. The reason why we think there should be an admonishment for this three-year-to-life term is that it's so severe. It's more severe than the other terms where there would be an end date, which is why the two more questions, I think, should be given and discussed between plea counsel and their client. As far as what the circuit court should do, I think that it really would only come up when you have a factual situation like this where a person is asking the judge about the MSR requirements. Because the court's usually only, you're right, only required to give direct admonishments of MSR requirements. But if you, excuse me, direct admonishments of the consequences of the plea. When the collateral consequences come up is just to ensure at a baseline level that people are entering knowing involuntary pleas, which is a requirement of every guilty plea. And when the court's asked about that, what they can't do is give incorrect information because then the plea isn't knowing. So if a person asks the court about it, then I think it would be similar questions. Here, what I think should have happened is Mr. Shaw was asking the court specifically, the circuit court judge, if the change of the mandatory supervised release term to three years to life would change his out date. And his public defender explains that that meant his time served in custody. The court told him, no, it won't change it. It will change your reporting requirements after you get out. But that's wrong. The trial judge also said, I don't have any control over this, and I don't really know how the process works. That was in the middle of the discussion, right. First he asked, he being Mr. Shaw, asked the court, does this change my out date? The court said, no, it won't change your requirements after you get out. Then he asked again if he had to go to the prisoner review board to get out, and the judge said that he wasn't sure of the requirements. Then Mr. Shaw asked a third time, he didn't understand if it impacted his out date, and he asked if he had to go to the parole board to get out. He asked if he had to go ask them to get out, and the court told him that no, he did not, that the MSR term would only impact his reporting requirements after he got out, and that's just incorrect information. He has to come up with a host site on his own before he can get out. If the trial judge had just said nothing, if he had just said, I don't know, then you wouldn't have a case. I think it's maybe tougher because there's not, you know, it's clear of a record that they're getting wrong information, and what the court can't do is give wrong information. At best practices, I'm not sure that we'd really be comfortable saying that's a knowing plea if a person is specifically asking a judge what the requirements of their plea are, and the judge is telling them, I don't know. I think in that situation, passing the case would probably be good so that everyone could get on the same page. So although without the wrong information being conveyed to the defendant, it might change the position of the litigant when you come in for appeals, post-convictions, but isn't it a better position to say that everyone who is being sentenced to a sex offense should be admonished? Because there's some people who don't even know what they don't know. Yes, I definitely agree for plea counsel. They definitely should be admonishing their clients every single time of the three-year-to-life term when that's the MSR term because people don't know what it means. Is it just the housing? What else should they be admonished about? I mean, there's lots of collateral consequences to pleading guilty to a sex crime. Is there, I mean, what, okay, so I understand the need to secure housing that's compliant with the statute. Yes. What about the need for a landline? That should be included? That's part, as it relates to the housing, yes. Yes. And then also no entry. That should be included? Because it's a requirement for the housing, and without housing you can't get out. Yes. And the claim in Mr. Shaw's petition is just about the housing condition, and he specifically put in his post-conviction petition. What was his out date? He was supposed to be released in September 2014, I believe September 24, 2014. And the date that he ultimately got out? It was May of 2019. I don't have the day of the month, so it was almost five extra years that he spent. In that period of time, do we know how many times he applied, proposed various housing sites? Did he? I don't know if that was specified in his petition the number of times. He did say that he, you know, as his out date approached, he talked to the prison about getting out, and they told him that he had to stay there indefinitely until he got a house, and then they were the ones to talk him out about this landline requirement and the no Internet requirement, and then he couldn't even live with his own children in the house that he had when he was to be released. They were the ones who told him, so he definitely, you know, asked about it there. Well, I understand, but did he, so we don't know in terms of, is there any sort of a formal process where you make a proposal to the Department of Corrections, to the parole board as to where you want to live, and then they go and investigate it? I mean, that was at least the process that was described in the federal case. Yes, yes. Every person, when they're in prison, before they get released onto MSR, they have to present a parole plan to the parole board, and that has to include a host site. Sure. And then it's inspected, and if it doesn't meet the requirements. Did he do it? Well, I believe so, based on what I just mentioned, that his outdated approach, he couldn't get released because he couldn't meet these requirements, and we're just at the second stage of post-conviction proceedings here. We're supposed to, at the pleading stage, we're supposed to construe those allegations liberally in favor of Mr. Shaw, just to see if he has a substantial showing of a constitutional violation. If there's concerns, I guess, about other stops he could have taken, I think those could be flushed out at the third stage at evidentiary hearing to see if there was a concern about that. Going back to something you said earlier about the court and a misstatement as opposed to the need to admonish, what's your legal support for that distinction? Where have we drawn that distinction in terms of misstatement versus a need to admonish? Because the case you cite for that in your brief, I don't think supports that. It's just, yes, I would say it's just basic United States Supreme Court precedent, Horkin v. Alabama, I direct her honors to, that just says you have to ensure a knowing and voluntary plea at a base level. So the somebody that's wrong means it's not knowing him. It's if you're told false information, it's not knowing him. Correct. Yes. What if you're told conflicting information? You're told, it won't affect your outdate, but I don't know anything about it, and I don't control it. Doesn't that put a defendant on notice that, gosh, maybe I need to do it? In the civil context, we'd say that bespeaks caution when you get conflicting information, right? Well, again, I just bring it back to the stage of proceedings. We're at the second stage of post-conviction proceedings. Mr. Shaw said in his post-conviction petition that he wasn't told about these host site requirements. We're supposed to construe the petition liberally in his favor unless the record contradicts that, and we don't have a contradiction here. So that's enough to get to the third stage where you can have an evidentiary hearing and get a little bit more information about what he knew or what he didn't know, and then if he can actually show that constitutional violation, that's when you move on to withdrawing the plea. We're just at the pleading stage here. Is there some limitation? The rule in your favor has a consequence for other cases, right? It's not just your case, right? It could, and obviously you can please write the best opinion you can. I think that this would be limited to people convicted of sex offenses with three-year-to-life mandatory supervised release terms who are pleading guilty. So it would be that scope of people. That's a lot of people. That's a lot of people. And the deprivation of the person who's sentenced to a two-year term of mandatory supervised release, that's not consequential? I mean, I think it's consequential. That's just not this case, and it's not as severe as the indefinite up to life being trapped in prison, which is why we think Hughes applies here, the Illinois Supreme Court case. It says when things are so severe, you have to advise your client of them. People versus Hughes and PDA versus Kentucky. Let's talk about that. Has Hughes, to your knowledge, been extended to anything beyond sexually violent persons, beyond the facts of Hughes itself as that? I did focus on applying it to the facts of this case. I'm not sure if it's been used in other contexts, but I think it's very similar to what's happening here because it's possible lifetime commitment is enmeshed in the criminal proceedings, and it's sufficiently certain to occur. Do you want to address, your friend on the other side cited a supplemental case, supplemental authority. Yes. And so this isn't, the appellate court has already addressed this issue, an unpublished decision, right? At least one. Are you talking about Pupil versus Schmidt? The fourth district. Yes, yes, yes. I don't think your Honor should follow that case. It's unpublished, and it's fourth district, so it's not all binding on this court. I also don't think it's persuasive. It doesn't touch on any analysis of the ineffective assistance of counsel claim. It doesn't analyze that issue at all. So it just doesn't apply there, and I think it's distinguishable on the due process claim with regard to what the court should have admonished Mr. Shaw about. In Schmidt, there was no incorrect information given. Here we have incorrect information that was given, that the MSR term, the change to three years to life, which changes out date, and it's reporting requirements, yes, to meet before, not after he gets out. So that's a factual distinction. So I don't think it's persuasive on that point either. We come back to, well, the issue of whether or not it's a voluntary and knowing plea. Yes. Should not hinge upon whether or not the judge gave them the wrong information. Do you agree? Could you repeat the question? Yes, because I confused myself. Thank you. You seem to put a regular, as you should, this is your case, on the fact that the judge gave the incorrect or incomplete information. Yes. And as opposed to if the judge had said nothing. How does that impact whether or not this is a voluntary plea? If there is this consequence, for instance, in the immigration cases. Like Padilla v. Kentucky. I believe Padilla is just a counsel case that counsel has to admonish, I think. I agree with you, it would be great if the court gave complete information. I'm not pushing back on that. I don't know how anyone can predict what's going to happen three years from now. I don't know how the defendant can say, yeah, I know that three years from now I'm going to have a relative that may or may not let me come and live with them, that may want to give up their cell line, may not ever find anyone in five years that has any landlines anymore. So there's certain things that no one can predict. But someone can say, you know that there is a possibility that these penalties exist. And I think he should have been advised of that, definitely by counsel and also by the court when he's asking about it. So, yes. It's your position as you stand here, not your position, but a minimum that would be the responsibility of the counsel to say, maybe we need to look at these possibilities because I'm advising you, as opposed to putting it as another admonishment by the judge. Yes. Yes. And two questions by counsel. Do you anticipate having access to housing with these requirements? Question two is, if not, you won't be released from prison until you do. So do you want to plead guilty? Well, the narrowest ground on which to rule would be to say misinformation, right? Trial judge gave misinformation. And that's a problem. And it would limit, it would certainly limit the application of any rule that would come out of the case. Yes, for the due process claim, yes, it would. Yes. We have to rule on both claims, so at least that's my understanding. Do you agree? We have to, at this stage, post-conviction, we have to say which either both or neither are going to an evidentiary hearing. Correct. The claims, they stand on their own. We think both should advance, but you would need to address both. Well, time flies when you're having fun. Yes. Thank you so much for your time. We would ask you to remand for a third stage evidentiary hearing, and I reserve time for a while. Thank you. Ms. Reed, whenever you're ready. May it please the Court. Today we ask this Court to affirm the decision for two reasons on both issues. So first issue, dealing with the trial court, clearly this is a collateral consequence. I think we all agree that it's a collateral consequence. It's just a matter of whether or not the trial court should. Well, isn't there, there's collateral and there's collateral. When you say, oh, collateral consequence, you might lose your right to own or possess a firearm or give up, that has nothing to do with the sentence that the judge pronounces. That truly is a collateral consequence. Correct. But this is actually part of the sentence, is that you're going to be subject to mandatory supervisory release for three years to life. I understand there's a body case where this is, well, the Court doesn't have anything to do with that, hands off. We don't control that. But it is part of the sentence, right? The MSR term, yes, itself is part of the sentence, and that's why a lot of courts have found that at least advising that there is this MSR term is sufficient from the trial court for a plea. What about the misrepresentation by the trial court? I mean, what is your answer to that? Based on reading the record, it doesn't seem like it's a full-on misrepresentation. We quoted at length a portion of the record that was towards the end, right before they finished off the plea hearing. The court is just consistently saying, you know, I'm not sure of the process and I'm not going to advise you as to the process. No, he's not consistently saying that. He is not consistently saying that. He says, it won't change your out date, it will change your reporting requirements after you get out. He says, he does say at some point, I'm not sure of the process, but he does tell him in answer to the direct question by counsel, is this going to change the day I'm going to get out? It's from the defense. But then his lawyer says, what he wants to know is when is he going to get out? Is it going to change the day I get out? And he goes, no. The court says, no. The court says, I'm not sure of the process, blah, blah, blah. The defense says, I've baffled as to, do I have to go to the parole board and ask to get out? Like, I don't know if that changes my out date. And the judge says, it won't change your out date, it will change your reporting requirements after you get out. Oh, okay, all right. Correct. That's right. He said that a couple of times. Correct. And from the court's perspective, clearly he would not understand if the out date would change at that point based on the five-year sentence. So it seems that from the court's understanding and from plea counsel's understanding of whether it would change his time served in custody, that is based on the five-year sentence alone. It does not seem that the court recognized that that was maybe, he was questioning of the MSR term itself. But the whole thing is about the MSR term. The whole discussion is about the MSR term. That's all that's changed. That's all that they're talking about. He understands the five-year sentence. He gets that. The court calls him back and says, oh, sorry, three to life, not two. And this is all about the MSR term and what it's going to do to his out date. Exactly. And to the defendant, he couldn't care what you called it, MSI, EAT, whatever. All he asked for, he was very clear, is it going to change my out date? When will I be out? And that was that. And anything that affected that was what was important to him. And being locked up for the rest of his life I don't think was collateral as opposed to being able to get out in five years. Honestly, I think based on the record, it looks more likely. So your position is, it's fine if it is, is this wasn't a misrepresentation. Not that a misrepresentation is okay, but that this should be read as not being a misrepresentation. Correct. Technically, it didn't change his out date. His out date was September of 2014. Correct. And it wasn't until the parole board process itself, which is what changed his physical out date. Okay, I have one last question. If we disagree with you and we say, oh no, this is a misrepresentation, not a deliberate one, because I agree with you, the judge didn't know. I don't think the judge, anybody thinks the judge deliberately lied. I don't think even opposing counsel thinks that. But if it is a misrepresentation, do you have an answer? With that, looking at the rest of it, his plea is still voluntary. Even if this is taken as a misrepresentation and the defendant was mistaken on what he was understanding, he still had time that he could have withdrawn his plea before being violated at the door. If he was that confused and that unsteady. He could not have withdrawn his plea then. Well, he certainly has 30 days from the date of the day he pled, right? Yeah, correct. So he could have gone back and done some research. He was a very smart guy. He asked a lot of questions. He was put on notice. He was given conflicting information by the trial judge. Okay. Correct. If it is considered conflicting information, he certainly could have withdrawn his plea if he was that. Within 30 days. Within 30 days. And he did not. So it seemed like everything was okay that he was accepting his plea until at the end of his sentence when he was violated at the door. Do you know why it took so long for this fellow to find suitable housing to satisfy the parole board? Do you have any insight on that? Like how many times he applied, tried? There is nothing in the record. It says he asked his father and his father would not give up the landline. That's what we think. The internet. The internet, yeah. Well, his father would not get a landline and give up his cell phone that had internet. That was what I read here. Somebody provided that information to him. Right, but if he applies in six months, okay, I'm getting near my outdate. I have to find housing. Let me apply. And I apply. And then I sit and do nothing for the next five years. That seems to me to be a very different case than if you applied numerous times. Yes, if he was actively applying over and over. Based on the record, it's unclear, though, how many times he applied. We don't have that information in front of us. But he had to at least apply once in order for the prison review board to have something to review. Correct. No, he could have not applied. Well, he had to present the plan. If he failed to present any plan. I know the record says he didn't. He was too busy doing research. Yeah. PC. He claims there's at least one time that he's applied. I'm not sure actually if that actually happened or not. Well, they said they went out with their files. It's in the record, so we're assuming that everything that's been presented to us is true and factual. Correct. But, I mean, again, though, does that. . . The issue is on the date that he took the plea, was it voluntary? Mm-hmm. Did he have. . . We don't let people that are not fully vested with all of their facilities, their faculties. We don't let insane people, people that have mental issues. We don't let them plead because we know that they cannot comprehend the seriousness of what is about to transpire. Voluntariness is a big issue here, isn't it? And how can you say that you voluntarily agree to something that you don't even know exists? I think that's where the distinction between the collateral and direct consequences come in and how this is a collateral consequence. While in, yes, a perfect world, we're going to have every. . . And that's what constructs the perfect world. I mean, that is humanly impossible at this point. We are not robots to be able to know every single thing that is going to happen or can predict everything that's going to happen in the future. So that's why this collateral consequence, especially in the trial court aspect, the court should not have to be required to admonish on this. In the plea counsel aspect, this is not. . . I don't think this rises to the level of severity as you see in the Hughes Court with the commitment under the Sexually Violent Persons Commitment Act and deeper. . . Why is it less severe than Hughes? For Hughes and then for the deportation, you're looking at things that are absolutely and certain to be lifelong consequences versus here. And as Judge Mitchell, you kind of pointed out of like how many times did he apply for this. You're not certain to be committed for life. You're not, right? I mean, that's the whole point. In the SVP, there's an actual separate proceeding, right, on the petition. Correct. And in the deportation, there's an actual hearing and there's a process. As one of the things that's somewhat disturbing from reading the federal case here is that there seems to be just an absence of any process. There's not necessarily a court hearing process like you would have with deportation and the Hughes consequences. We have a case where we think there was an application, but we're not 100 percent sure. We don't know if there have been multiple applications. And what procedure exists to appeal that? What if it's an erroneous deprivation, an erroneous decision? Is there any process by the Prisoner Review Board where they revisit this? As I understand, I believe it's the Murphy case that goes through in detail of what the Prisoner Review Board does. They have their own process to review these claims, and usually it's sent back to the Department of Corrections to look at further host sites if a defendant provides them. But it's all through the Prisoner Review process. It's not through an actual court system. So that would be needing possibly to change the constitutional requirements. One of the things that seemed to disturb the district project was it really seems to exist by word of mouth, this process. Correct. So, I mean, we don't fully know. Doesn't that strike you as reminiscent of like a Soviet gulag? You don't get out until the commissar says you get out. I wouldn't put it that far. I think the important aspect of what this process is exactly, whether it is exactly what the Murphy v. Brown case lays out or if it's like a similar sort of process, that would be more of a challenge to the Prisoner Review Board itself versus what the challenge here is. It's not like the constitutionality of it all. It's more of just whether the trial court and plea counsel were required to talk about this issue to defend it, to make a plea voluntary. So it's kind of distinct issues. So your position relative to counsel's obligation, do you weigh in on that? I don't think that counsel has an obligation. I don't think this falls under the requirements. The Hughes case somewhat supports this. Paragraph 29, they state that requiring defense counsel to predict and explain all of the ways in which a client will be impacted by a conviction would not be reasonable. Then they say, rather, where the consequence is severe, certain, and sufficiently enmeshed in the trial process, the Sixth Amendment right to counsel may give rise to a basis for withdrawing a plea,  But if not here, I mean, again, what distinguishes this? In what way does this not meet the Hughes criteria? It is severe. It is certain. Why does it not meet the Hughes criteria? I mean, he doubled his sentence, essentially. I don't find it as certain and automatic and immediate as the commitment under the Sexually Violent Persons Act. And this is apparent from the fact that defendant is out right now. While he is out on MSR, he is outside of prison, and he is out on his own. So that is a very distinct look compared to... So you're saying they're more likely to actually get out than somebody who's found to be an SVP. Is that kind of what you're saying? A little, essentially, yes. And I think there's also a big difference that if he was still in prison, he would be able to continuously put forth different host sites to get out. And if you're found to be an SVP, you think it's reviewed every year to see if you remain an SVP. So, I mean, there is... Nothing is forever, theoretically. Theoretically, yes. I mean, I agree with you that the line is kind of hard to draw, but once that door is opened by Hughes to collateral consequences, I'm not clear what your reason is that this... Correct. And I think this has more wide-encompassing issues that could really open the door to anybody that is subject to MSR, which is most people convicted, that it can result in an unnumberable need to have admonished a defendant pleading guilty for various different convictions. It's entirely possible that a decision could be read that way. Couldn't they just add a sentence, just as they do in the deportation matters? The court doesn't say, well, we know you're going to get deported. Do you know you're going to get deported? The court says there's a possibility these things exist, and then maybe you need to continue so you can go and further explore what all of those horrible consequences are, as opposed to just ignoring it and thinking that his outdate is going to be the date that the judge just told him he was getting out. I think that leaves too much open for interpretation, just because it's not certain what the prisoner review board is going to do. But at least it puts him on notice. My colleague was discussing notice. He'd be on notice that there is this draconian sort of Damocles hanging over his head if he doesn't get somebody that's going to let him live with them with no Internet and no children and not near a park, etc., etc., etc. He would know that when he entered the plea. Then there'd be some certainty, I guess, that at least he fully understood the action that he was taking, as opposed to no one ever broaching the subject with him. How do you say it's voluntary when he doesn't know that this is a possibility? You know that when the light is red and the little man is flashing on the thing, that if you step out then you may hit it back on. It's not certain, but you may. But you took that risk. But he didn't see the little man flashing. He didn't know what was happening. I mean, it's a distinct possibility. And again, in a perfect world, then yes, we're wanting to know all of these consequences. But the one that will keep you in jail for the rest of your life is very severe, I would think. That would be one. Maybe not all of them, but that one would be one that maybe we should give him a hand about. I don't think there's a possibility of the distinction that it's going to for sure keep you in jail for the rest of your life. No, not for sure. Possibility. I guess it just depends on the degree of the possibility, which again, as was pointed out, there's thousands of people that are on MSR for sex crimes, and not everybody is held and not everybody meets these requirements or doesn't meet these requirements. It really is dependent on the specific defendant's situation. And that's not always predictable by the time they finish off their sentence itself. Let me ask you about the federal case. It's my understanding that the federal judge at some point issued a preliminary injunction. Are you aware of that? I was not fully aware of that. I don't understand the question. That's one of the developments that came out of the companion case to Murphy. Yeah, just my understanding of Murphy overall is that while this can be a severe consequence, and it was found as applied to those defendants in that case it was a severe consequence, it's not something that's always going to be severe, and we're not having a facial challenge to the application of anything here. So it's something that could go either way, but it's not always going to be certain that it's going to be that issue. And then also just addressing the Schmidt case. We cited that just for the first issue just because it does address that because this is a – that the decisions related to defendant's MSR term will be made by the Prisoner Review Board, it's not something that the circuit court controls. They go on to say that thus the lack of admonishments does not call into question the constitutional voluntariness of defendants guilty. And they rely on Delavar and McDonald for those decisions, for that decision. And then also just to the remainder of the ineffective claim, even if this is going to be deficient performance or anything of that nature based on this plea, based on this consequence, he still cannot meet the prejudice standard. Really? Why do you say that? He definitely has articulated a defense that he would have put on had he known that he was serving a 10-year term instead of a 5-year term. I think the importance really lies in the consequences of the plea versus consequences of conviction. In either way that he is going to be subject to the three years to life MSR only if he gets convicted. What comes out of me is that this was a defendant who, when the trial judge advises him of what he's charged with, he says, I know what I'm charged with, I didn't do it, but I still want to plead guilty. He'd already spent some time in, I think. 1100 days. So he was close to getting out. Well, and then still, even though he fully believes that he's innocent, he still persisted in his plea of guilty. Right, and the U.S. Supreme Court says you can do that. You can do that. Put it behind you. Correct. Correct. But at the same time, if he really persisted in this, and he had this innocence based on this defense, again, he could have withdrawn his plea within that time period. He made a calculus. So just as you say, well, if he got the minimum, he would be doing more time than if he took the plea. Well, right. Part of his calculus is I'm going to get an exit date of September 2014. I'm close to that. Let me just go and move on and get this behind me. I mean, that's potentially, but I also, if you look at the Tusik court's decision as well. But there was no defense there. It was just credibility. He has a very articulated, and I believe he articulates in his petition, defense that he would put up, that it was consensual sex, and that he underpaid her, and that this was a prostitution situation gone bad. I mean, he has a defense. I mean, it's a very vague defense overall, though. He mentions that there is this witness that would support his claim, but he doesn't name this witness. There is no indication of who this witness is, where they are, or anything of the matter. He needs to include something outside of the record under the Post-Conviction Hearing Act to support his claims. And while that, yes, can be something that's fully fleshed out on a third stage, at the second stage it still does not pass the constitutional muster as required. And this is also apparent from his supplemental petition, is very vague of just saying, oh, yeah, there's a consent of defense, but it doesn't go into any potential details or anything of whether this defense is actually viable. No, he said he's got texts. There were texts, there were phone calls. He's got some indicia that he may have some posts. And you surely could have said some recent fabrication, right? Because Ed was pleased. He says, yeah, I understand what I'm charged with. That's not something I actually did, but I understand what I'm charged with. So, yeah, I understand that. But there's plenty of defendants that have said that in the past for things, and they still have a voluntary plea based on the remainder of what was admonished at court. He's not saying he's involuntary because he had a defense. You're saying no prejudice. And we're saying, yeah, maybe prejudice, because it's different than the case that you cite where there really was no prejudice and no defense. Yes, I don't believe that is a viable defense if we're going to take into account the defense. And also comparing it with the consequences of both of them, he would have received a higher sentence and still had no guarantee that he would have been violent at the door or released at the end of his sentence. I mean, again, to be flushed out, I think, at the third stage hearing, if that's where you go. Potentially. But it's a very flimsy defense. That is very controversial. I think now the trial will be over, too. Yes, I mean, if there are no further questions, then for these reasons and those stated in our brief, we ask the support department to suspend. Thank you. Thank you very much. I did want to bring your honors back to Murphy v. Raul, the federal case where they found that it was virtually non-existent opportunities for people who are indigent and convicted of a sex offense to be released. It's not about something they did or didn't do. They can't get out because they don't have enough money, essentially. And all the additional restrictions that are placed on people who are convicted of a sex offense, where they can't go to a halfway house, they can't go to a homeless shelter, they can't go to a work-release program, they get trapped. I did want to address your question about what Mr. Shaw put in the petition about getting released. He did talk about how he didn't plan to go live with family. He wasn't able to live with family. His plan was to go to a shelter, but he found out he wasn't allowed to do so. And this is talked about on pages 263, 278, and 285 of the secured common law record. If your honors wanted more information about his plan and what he tried to do to get released, but he was unable to do so, just like all of the other people in his position. And our point here is that he just should have been advised of these requirements of his MSR term before he pleaded guilty by counsel or by the court, if he was going to be asked about them, before he decided to give up his defense that he did have and enter that guilty plea. Let me ask you a question. Yes. If we were to expand, or say this falls within Hughes and it's one of those collateral consequences that there is some obligation to discuss, what's the limiting principle that you would suggest on that expansion? Do you understand my question? I think so. Why does it apply, as the opposing counsel suggests, to all MSR terms? You have to understand what MSR is. It means blah, blah, blah, blah, blah. Where's the limit? I think for this case it would just apply to the three-year-to-life MSR terms for sex offenses, because the life term is so severe, it's different than those terms of years that have an end date. It's indefinite. It's up to life. And the fact that it's for a sex offense means that people have even less opportunity of places to live on that MSR term, because they can't go to a halfway house. They can't go to a homeless shelter. They can't go to a work-release site. So that's, I think, the limitation. The consequence of the three-year-to-life term is so severe, and the opportunities to meet it are so limited, and we know it's sufficiently certain they won't be able to looking at the federal cases, or if you view our rule, that there needs to be admonishment before pleading guilty. If there are no other questions I can answer, we'd again ask to remand for a third-stage evidentiary hearing. The brief that was submitted for your client indicates that he did not have an approved host site, because he had no money or home of his own, and no family member had a home, because his father's home has a computer. So he couldn't live with his father because of the computer. Yes, yes. And I just brought that up because I know I just didn't make that up out of the blue. I was on a reality check to see if I'm really going to get so many of these. Yes. I apologize for not having the page numbers before that. That is in the briefs. He does talk about he can't go to family. He doesn't have resources of his own. So that's why we're here. Thank you so much for your time. Okay. With that, I'll be taking other advice. Thank you.